UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAMON McGHEE and JULIE McGHEE, ) ) ) Plaintiffs, ) ) v. ) ) STATE FAARM FIRE AND ) CASUALTY COMPANY, ) ) Defendant. ) | No. 4:23CV1009 HEA |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 30]. Plaintiffs oppose the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

**Fecks and Background**

Plaintiffs brought this action seeking to recover under their homeowner's insurance policy for water damage to their home which occurred on June 13, 2022. Defendant issued the policy on the home. Defendant inspected Plaintiffs' home following their water loss and issued an initial actual cash value payment of $23,720.30.  . On April 11, 2023, Plaintiffs submitted additional documentation of repairs they believed to be necessary as a result of the water loss. Defendant reinspected the home and issued a supplemental actual cash value

payment of $8,189.20 on May 10, 2023.

Plaintiffs informed Defendant that they disagreed with the amount of the May 10, 2023, payment. Defendant obtained an outside vendor's estimate for the cost to replace certain flooring in the McGhees' home that was higher than the amount used to calculate the May 10, 2023, payment. State Farm voided the May 10, 2023, payment of $8,189.20 on May 13, 2023, and then issued an additional payment of $15,903.15 on May 24, 2023.

Plaintiffs did not receive the payment made on May 24, 2023, and payment was reissued February 21, 2024.

Under the "SECTION 1 – LOSS SETTLEMENT" of the policy, the insurance policy with State Farm states:

> Only the Loss Settlement Provisions shown in the Declarations apply. We will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and we will not pay, any amount for diminution in value.
>
> COVERAGE A – DWELLING
>
> 1. A1 – Replacement Cost Loss Settlement – Similar Construction.
>
>> a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:
>>
>>> (1) until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property,

> up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>
> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>
> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed…

Plaintiffs do not disagree with the way in which Defendant applied depreciation.

Plaintiffs have not completed the repairs to their home for damages caused by the loss at issue in this lawsuit. Plaintiffs gathered multiple bids for Defendant for items such as plaster work and flooring. Plaintiff Damon testified he did not sign contracts for repairs because of disagreements with Defendant over repairs.

Mark Strutman's role was to reconcile the scope of work issues between Defendant and Plaintiffs. In its estimates, Defendant advises Plaintiffs to contact Defendant before beginning repairs if the Plaintiffs' contractor's estimate is higher that Defendants. Mr. Strutman testified that purpose of this language is "So that the insured does not get caught with a bill that the insurer didn't approve without the insured reconciling and being able to adjust the item.

Plaintiffs purchased a travel trailer on September 6, 2022. Beginning October 3, 2022, they used the travel trailer to live in while working in Florida as traveling insurance adjusters until May 2023. If they did not have the travel trailer, they would have been required to spend their own money to stay in a hotel while working in Florida.

Plaintiffs testified their residence became completely unlivable due to the loss in approximately September 2022.

The policy contains the following insuring agreement for Additional Living Expense:

> 1. Additional Living Expense. When a loss insured causes the residence premises to become uninhabitable we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24
> months.

Plaintiffs rented a storage container while their home was being renovated prior to June 13, 2022, at Life Storage to store personal property. The amount of storage space rented by Plaintiffs changed after the water loss on June 13, 2022.

## Legal Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists*." Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

The parties agree that Missouri law governs interpretation of the insurance contract. Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

5

If ambiguity exists, the Court interprets the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quoting *Seeck,* 212 S.W.3d at 132). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). Courts must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance...." *Seeck*, 212 S.W.3d at 132 (internal quotations and citations omitted). " 'A contract or provision ... is not ambiguous merely because the parties disagree over its meaning.' " *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

## Discussion

**Replacement Cost**

The following relevant provisions of the insurance contract govern the present dispute.

6

SECTION 1 – LOSS SETTLEMENT" of the policy, the insurance policy with State Farm states:

> Only the Loss Settlement Provisions shown in the Declarations apply. We will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and we will not pay, any amount for diminution in value.
>
> COVERAGE A – DWELLING
>
> 1. A1 – Replacement Cost Loss Settlement – Similar Construction.
>
>> a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:
>>
>>> (1) until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
>>>
>>> (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
>>>
>>> (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed…

It is undisputed that Plaintiffs have not completely repaired their residence which they allege was damaged by water. The contract states that Defendant pay only the actual cash value of the damaged part of the property until the lost or damaged property is actually repaired or replaced. At which point, Defendant will pay additional amounts the insured actually and necessarily spent to repair or replace the damage property. Defendant argues that plaintiff is precluded from seeking RCV damages in this case as a matter of law under the replacement cost provision of the contract. Plaintiffs disagree and contend that they are entitled to seek the RCV as damages on its breach of contract claim because Defendant has precluded them from repairing the home because Defendant has not paid sufficient amounts.

Construing a nearly identical replacement cost provision under Missouri law, the Eighth Circuit Court of Appeals held that "the policy's replacement cost provision was clear and unambiguous, and therefore the district court was required to enforce the provision as written." *Olga Despotis Trust v. Cincinnati Insurance Company*, 867 F.3d 1054, 1064 (8th Cir. 2017). "Courts applying Missouri law have found when a policy requires repair or replacement of the damaged property as a condition precedent to receiving payment for the repair or replacement costs, the insurer has no obligation to pay that amount unless or until repair or replacement occurs." *Id*. (citing *Porter v. Shelter Mut. Ins. Co*., 242 S.W.3d 385,

8

394 (Mo. Ct. App. 2007); *Kastendieck v. Millers Mut. Ins. Co. of Alton, Ill.*, 946 S.W.2d 35, 40 (Mo. Ct. App. 1997); *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977-78 (8th Cir. 2016)). The Eighth Circuit therefore affirmed the district court's determination that the insured was not entitled to seek replacement cost value ("RCV"), as a matter of law because "[i]t is undisputed that the replacement process was neither complete nor underway within two years of the date of loss as required under the policy." *Id*.

In support of its argument that it should be entitled to seek RCV damages even though it has not repaired or replaced the damaged property, plaintiff relies on two decisions from this district, *Calhoun v. State Farm Fire and Casualty Co.*, 4:19CV2540 SNLJ, 2021 WL 388556, at *3 (E.D. Mo. Aug. 31, 2021), and *Cincinnati Ins. Co. v. Saint Louis Produce Markets, Inc.*, 4:20CV358 SNLJ, 2021 WL 4988876, at *4 (E.D. Mo. Oct. 27, 2021). In *Cincinnati Ins. Co.*, the district judge construed a replacement cost provision in an insurance policy. Although he acknowledged the Eighth Circuit's opinion in *Olga Deposits*, the judge concluded that the insured was not precluded from seeking RCV on its breach of contract claim despite not repairing or replacing the property within the time frame required by the policy because "[h]aving denied that the roof damage is a loss, [insurer] cannot then rely on the two-year limitation that applies only to loss." *Id*. To support his conclusion, the judge cites to his prior decision in *Calhoun* and a 1970 Missouri

9

Supreme Court case holding that "[i]t is elementary that a party to a contract cannot claim its benefit where he is the first to violate it." *Boten v. Brecklein*, 452 S.W.2d 86, 92 (Mo. 1970).

Neither of these decisions was appealed to the Eighth Circuit as the cases settled on the eve of trial, so the Court declines to consider them as persuasive authority. This Court is bound by the Eighth Circuit's decision in *Olga Deposits*, which requires the Court to apply the unambiguous language of the replacement cost provision of the policy as written. That provision precludes Plaintiffs from seeking RCV damages in this case because they have not complied with the condition precent of repairing or replacing the property. Judge White in the District Court decision in *Olga Deposits* rejected the same type of "seed money" argument made by Plaintiffs here, and the Eighth Circuit affirmed his decision. To permit Plaintiffs to seek RCV in this case, even though they have not performed the required condition precedent of repairing or replacing the property, would reward Plaintiffs with a benefit to which they are not entitled under the contract. Plaintiffs are precluded as a matter of law from using replacement cost value as a measure of damages on its breach of contract claim.

**Additional Living Expenses**

Defendant seeks summary judgment on Plaintiffs' claim for additional living expenses, ("ALE") arguing Plaintiffs did not claim ALE in their Petition nor in

their Rule 26 Disclosures. Although Plaintiffs includes ALE in the Petition, Defendant argues ALE damages are special damages which must be specifically pled under Rule 9(g) of the Federal Rules of Civil Procedure.

Typically, "general damages" arise from the proximate and foreseeable consequences of the defendant's conduct. 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1310 (4th ed. 2021). "Special damages," on the other hand, result from the wrongful act, but "are not usually associated with the claim in question and must be plead in order to avoid unfair surprise to the defendant." *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 n.10 (8th Cir. 2004). Because special damages may not be the natural or foreseeable result of a defendant's conduct, a plaintiff seeking special damages must plead them with particularity pursuant to Rule 9(g), which states "If an item of special damage is claimed, it must be specifically stated." *See Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1140–41 (D. Minn. 2022).

Although Defendant would have the Court find lodging and storage expenses are special damages, these are precisely the types of damages which are the natural and foreseeable result of a property damage insurance claim.

Plaintiffs' Petition alleges Defendant breached the insurance agreement by, *inter alia*, failing to provide Plaintiffs with additional living expense coverage and advising Plaintiffs to "not ask about it." This allegation is sufficient to put

11

Defendant on notice under the Federal Rules that Plaintiffs are claiming ALE damages.

With respect to whether Defendant is entitled to judgment as a matter of law with respect to the actual ALE costs Plaintiffs are claiming, the record is replete with questions of fact that must be determined by the trier of fact.

Defendant claims a travel trailer does not qualify as an additional living expense because Plaintiffs would have had to stay in a hotel while travelling, the record is devoid of any evidence as to whether Plaintiffs stayed in the travel trailer during the time they were not out of town and their home was uninhabitable.

Likewise, although Plaintiffs may have had a storage unit before their home was damaged by water, questions remain as to the extent of the use of the storage unit during the time the home was unlivable. Costs for the unit may have increased because of additional items that needed to be stored in the unit because of the water incident. Defendant is not entitled to judgment as a matter of law on Plaintiffs' ALE claims.

**Punitive Damage Claim**

Defendant argues it has paid Plaintiffs' claim by paying the Actual Cash Value of the claim. Defendant, however, did not pay, or even address Plaintiffs' ALE claim. Indeed, Plaintiffs assert Defendant told them not to even ask about it.

Clearly factual disputes remain as to the course of events with respect to Plaintiffs' ALE claim. RSMo. 375.420 provides:

> In any action against any insurance company to recover the amount of any loss under a policy of … fire…or other insurance…if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Defendant's motion for summary judgment on Plaintiffs' punitive damages claim must be denied.

## Conclusion

Base upon the foregoing, Defendant is entitled to judgment as a matter of law on Plaintiffs' repair and/or replacement claim. As to Defendant's motion with regard to Plaintiffs' claim for Additional Living Expenses and Punitive Damages, disputes as to material facts remain and judgment as a matter of law is not appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 30] is granted in part and denied in part.

Dated this 4th day of March, 2025.

13

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE